J-S08030-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| IN RE: A.C., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.B., BIRTH MOTHER, | |
| | No. 1572 WDA 2017 |

Appeal from the Order entered September 7, 2017,
in the Court of Common Pleas of Allegheny County,
Orphans' Court, at No(s): CP-02-AP-65-2017.

BEFORE: LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.*

MEMORANDUM BY KUNSELMAN, J.: FILED MARCH 7, 2018

Appellant, T.B. ("Mother") appeals from the order involuntarily terminating her parental rights to A.C. ("Child") pursuant to the Adoption Act, 23 Pa.C.S. §§ 2511(a) and (b). After careful review, we affirm.

The pertinent facts and procedural history are as follows: Appellant is the birth mother of A.C., born in late July 2016. The Allegheny County Office of Children, Youth, and Families ("the Agency") first became involved with Mother and her family in 2008. Mother's parental rights to her six older children had been either voluntarily or involuntarily terminated. Historically, Mother's challenges have included homelessness, unstable housing, the inability to parent, financial difficulties and domestic violence. In addition, Mother has a history of intellectual disability.

_____
*Former Justice specially assigned to the Superior Court.

As long as she abided by the Agency's safety plan, Mother was permitted to leave the hospital with Child. According to the plan, Mother was to reside with Child's paternal grandmother, who would act as a support for Mother in her caring for Child. In-home parenting services were also provided to Mother.

Only a few weeks later, on August 12, 2016, the Agency obtained an emergency custody authorization and removed Child from Mother's care the next day. This removal occurred because Mother left the parental grandmother's home in the middle of the night with Child and refused to provide the caseworker with an address where she would be staying. Child has not returned to Mother's care since her removal. Child was adjudicated dependent on September 16, 2016. Mother's reunification goals included participating in a life-sharing program, maintaining visitation with Child, maintaining employment, obtaining appropriate housing, improving her parenting skills, and cooperating with Achieva.

On April 4, 2017, the Agency filed a petition to terminate Mother's parental rights.[1] The trial court held an evidentiary hearing on the petition on September 7, 2017. At this hearing, the Agency presented testimony from its caseworker assigned to the family, a foster care caseworker, and Colleen Sokira, an Achieva representative, who had expertise in the area of parenting

_____

[1] The Agency also filed petitions to terminate the parental rights of two possible fathers named by Mother, as well as any unknown father. The trial court later terminated their parental rights. No one has filed an appeal.

skills of a person with an intellectual disability. In addition, the parties stipulated to the introduction of expert evaluations prepared by Dr. Neil Rosenblum, the court-appointed forensic psychologist. Mother was present, and testified on her own behalf. The court also called as its witness a CASA representative who had been involved with Mother and Child.

At the conclusion of testimony and argument from counsel, the trial court entered a written order terminating Mother's parental rights under 23 Pa.C.S. §§ 2511(a)(2), (5), and (b). This appeal follows. Both Mother and the trial court have complied with Pa.R.A.P. 1925.

Mother raises the following issue on appeal:

I. Did the trial court abuse its discretion and/or err as a matter of law in concluding that [the Agency] met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of [Child] pursuant to 23 Pa.C.S. §2511(b)?

Mother's Brief at 6.

"[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights." In re Adoption of S.P., 47 A.3d 817, 826 (Pa. 2012). This standard of review requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." Id. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." Id. We may reverse a decision based on an abuse of discretion "only upon

- 3 -

demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." Id. We may not reverse, however, "merely because the record would support a different result." In re T.S.M., 71 A.3d 251, 267 (Pa. 2013).

We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." Id. Moreover, the trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. In re M.G., 855 A.2d 68, 73-74 (Pa. Super. 2004).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." Id. (citation omitted).

Mother concedes that the Agency presented sufficient evidence to terminate her parental rights pursuant to Section 2511(a). Thus, we need not discuss Section 2511(a) further.

We also agree with the trial court's determination that the Agency met its burden under 23 Pa.C.S. § 2511(b), and that terminating Mother's parental rights is in the best interest of Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." In re Adoption of J.M., 991 A.2d 321, 324 (Pa. Super. 2010).

In In re C.M.S., 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." Id. The extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012).

In the instant case, the trial court concluded the record established clear and convincing evidence that the termination of Mother's parental rights would serve the best interests of Child. The court concluded that any relationship between Mother and Child is not necessary or beneficial, as it is clear that Child is not safe while in Mother's care. In addition, the court found that Child's foster parents provide for her security and that Child has bonded with them. The court explained:

> Although Mother refused to be evaluated by forensic psychologist Dr. Neil Rosenblum, the Court is still able to find no beneficial bond exists between Mother and [Child];

termination of Mother's rights is in [Child's] best interest. Indeed, the Court heeds Dr. Rosenblum's recommendation that it "give serious consideration to [terminating Mother's rights] as being consistent with [Child's] needs and welfare, and [allow Child] to maintain continuity of care and providing her with a bright and secure future with her current family unit." [Child's] current family unit includes her older, biological sister, who was adopted by her pre-adoptive foster parents. [Child] also has access to her other biological siblings, though they live with different families.

[Child's] need for consistency and security factored into the Court's calculus. [Child] has lived with her foster parents essentially from birth.

* * *

Equally concerning is Mother's apparent intellectual disability. Part of Mother's reunification plan was working with Achieva. The Court heard testimony from Colleen Sokira, who provided services to Mother and who oversees the parenting program designed for adults with intellectual disabilities. Her testimony demonstrated that Mother is unable to attend to [Child's] needs and welfare. For example, Mother does not grasp the concept to be wary of strangers – that is, she cannot evaluate who is safe for her and [Child] to be around. This is not unrelated to Mother's struggles to remove herself from violent relationships, specifically from C.C., the alleged father of [Child] and the father of some of her siblings. Even now, Mother has denied that she is still involved with C.C., but those involved with the case suspect that she still is. C.C. has been a danger to both Mother and her children in the past.

Mother also lacks situational awareness, which poses risks to [Child]. Her hygiene has been an issue. In one instance, Mother's new tattoo had become infected; she told the Achieva staff, the tattoo was a gift from C.C. when they inquired how she could afford it. Mother needed to be told to cradle [Child] in the opposite arm, as the infected tattoo was oozing pus and Mother complained of pain. (Mother testified that the tattoo was not infected but was merely healing.) These prompts by professionals are necessary for Mother to effectively parent [Child]. Mother's needs for prompts is why even unsupervised visits with [Child] were

deemed unsafe. Mother struggles to pay for basic needs like food and clothing. She also does not understand that she needs to put [Child's] needs before her needs. For example, Mother will direct [Child] to play with a toy she brought or to give affection to [Child] beyond which [Child] is comfortable with. As [Child] squirms, indicating she is no longer comfortable, Mother will continue to press the issue until Mother is satisfied unless corrected by a supervising adult. Mother will let her own emotional needs overpower the visit, as she will tend to them before tending to [Child]. She also does not understand what type of food is appropriate for the young [Child] to consume.

Nevertheless, Mother has made strides in recent years. Had she been agreeable to pursuing a cohabitation arrangement with an appropriate adult via the Life Sharing Program, and had she engaged with her service providers, the conditions which led to removal might one day be alleviated. Even then, this could only transpire through daily support and supervision by an adult who could ensure that [Child's] needs were addressed. What is certain here is that termination is in the best interests of [Child] and only termination will serve [Child's] needs and welfare.

Trial Court Opinion, 11/13/17, at 3-5 (citations and footnote omitted). We agree.

Mother argues that the trial court abused its discretion and/or erred in concluding that the Agency presented clear and convincing evidence that termination of her parental rights would best serve Child's needs and welfare pursuant to 23 Pa.C.S.A. § 2511(b). She first notes that Dr. Rosenblum gave his expert opinion even though he never observed her interaction with Child, and the Agency's caseworker only observed one interaction between them. According to Mother, "[s]uch a deficiency of evidence prevents the trial court

from making a determination that the evidence was clear and convincing that [her] parental rights needed to be terminated." Mother's Brief at 11.

In addition, Mother reiterates that the focus under section 2511(b) is not the limitations of the fault of the parent. She then cites to her own testimony, as well as certain statements made by the Agency's caseworker and others, "that evidenced a loving relationship between Mother and [Child] which contradicts a finding that the evidence clearly established [her] parental rights needed to be terminated." Id. Mother asserts a bond exists with Child that is worth preserving. Finally, Mother argues, "[t]here was no evidence of detriment to [Child] if [her] parental rights remained intact." Id. at 16.

Initially, we cannot disturb the trial court's credibility determinations. In re M.G., supra. The trial court resolved any conflict in the testimony presented, and concluded that no beneficial bond existed between Mother and Child. Contrary to Mother's claim on appeal, the record is replete with evidence of a detriment to Child if Mother's rights were not terminated. There is no evidence of record, however, that Child would suffer extreme emotional consequences should the parent-child relationship be severed. Even if the court found an emotional bond existed between Mother and Child, the mere existence of an emotional bond between them does not preclude the termination of her parental rights. T.S.M., 71 A.3d at 267.

Moreover, when performing a needs and welfare analysis, trial courts are permitted to consider the totality of the circumstances. In re Coast, 561 A.2d 762, 771 (Pa. Super. 1989) (en banc). Indeed, the bond between parent

and child must not be viewed solely from the child's viewpoint; rather, a bilateral relationship must exist which comes from the parent's willingness to parent appropriately. In re K.K.R.-S., 958 A.2d 529, 534-35 (Pa. Super. 2008). In this manner, Mother's inability to parent remains relevant to consideration of the Child's needs under Section 2511(b). Indeed, by not contesting the trial court's findings regarding Section 2511(a), Mother concedes her inability to parent.

Finally, we find Mother's argument that the expert testimony presented by Dr. Rosenblum should be assigned little weight to be disingenuous.[2] His inability to observe the interaction between Mother and Child resulted from Mother's refusal to cooperate. As the trial court noted, Mother twice failed to appear for an evaluation with Dr. Rosenblum. See Trial Court Opinion, 11/13/17, at 3 n.3. Indeed, as explained by the trial court:

> [T]he Court sought to accommodate Mother's reunification efforts by working around her work schedule when scheduling visits. Mother initially visited [Child] at the Project Star facilities, but those visits were changed to the Achieva program located in a different part of town. Those visits were always supervised and occurred twice per week. But during the pendency of the case, Mother's participation declined steadily. Her attendance dropped from 70% to 50% to 30%. At the time of the evaluation in June 2017, visitation dropped off completely. Some of these cancellations were through no fault of Mother's, as the

_____

[2] Although Mother correctly cites testimony from the Agency's caseworker who only observed one visit, she ignores Ms. Sokira's detailed testimony regarding Mother's visits with Child. See N.T., 9/7/17, at 29-47.

facilities were closed for the holidays. Nevertheless, it was clear that Mother was not compliant.

Achieva staff even offered to drive Mother to work after the visit or change the day of the visit, if the issue was her work schedule. Still, Mother did not appear. Eventually, Mother was ordered to appear 30 minutes early for a visit to build in not only a buffer but also a time where Mother can get settled and prepared for the visit. But if she did appear early, she spent that time in the restroom. Mother's refusal to participate in the visits deprives [Child] of the consistent [parental] presence that would form a relationship necessary for [Child's] development.

Trial Court Opinion, 11/13/17, at 4 (citations omitted). In fact, Ms. Sokira testified that the very limited number of parenting skills learned by Mother directly correlated to the limited number of supervised visits she had with Child. See N.T., 9/1/17, at 41.

In considering the totality of the circumstances, the trial court concluded that the best interest of Child, that is, permanency and stability, is best served by terminating Mother's parental rights. Our review of the record readily supports this conclusion.

In sum, our review of the record supports the trial court's determination that that the Agency met its burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(b). Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/7/2018